SHELVIN E. BYARS, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Byars v. Commissioner
Docket Nos. 16157-88, 3789-90.
United States Tax Court
T.C. Memo 1992-169; 1992 Tax Ct. Memo LEXIS 180; 63 T.C.M. (CCH) 2488; March 23, 1992, Filed *180 Orders and Decisions will be entered for respondent, as modified in respondent's motions to dismiss. Henry Thomas Schafer, for respondent. DAWSON
DAWSON
MEMORANDUM OPINION DAWSON, Judge: These cases were assigned to Special Trial Judge Larry L. Nameroff pursuant to section 7443A(b)(4) and Rules 180, 181, and 183. [1] The Court agrees with and adopts the opinion of the Special Trial Judge, which is set forth below. OPINION OF THE SPECIAL TRIAL JUDGE NAMEROFF, Special Trial Judge: In docket No. 16157-88, respondent determined a deficiency in petitioner's Federal income tax for 1982 in the amount of $ 24,890, and additions to tax under section 6651(a)(1) in the amount of $ 5,825.75, section 6653(a)(1) in the amount of $ 1,328.80, section 6653(a)(2) in the amount of 50 percent of the interest due on $ 26,576, and section 6659 in the amount of $ *181 6,167.10. Respondent also determined that the entire underpayment of tax for 1982 was a substantial underpayment attributable to tax-motivated transactions for purposes of computing interest under section 6621(c). The adjustments in the notice of deficiency pertain to the disallowance of claimed losses with respect to petitioner's investments in partnerships totalling $ 49,033. By Amendment to Answer, respondent claimed an increased deficiency attributable to unreported income in the amount of $ 161,288.29, and an addition to tax under section 6653(b)(1) in the amount of $ 65,210, [2] all pursuant to section 6214(a) (although the exact amount of the claimed increased deficiency was not stated). Petitioner filed a Reply denying all affirmative allegations set forth in respondent's Amendment to Answer. In docket No. 3789-90, respondent determined deficiencies in and additions to petitioner's Federal income taxes as follows: Additions to Tax
Year
Deficiency
Sec. 6653(b)(1)
Sec. 6661(a)
1983
$ 264,053
$ 133,696
$  66,013
1984
890,965
447,618
222,741
1985
169,976
85,166
42,494
*182 Respondent also determined additions to tax under section 6653(b)(2) for each year in the amount of 50 percent of the interest due on the entire amount of each underpayment. Finally, respondent determined that each of the underpayments of tax is a substantial underpayment attributable to tax-motivated transactions for purposes of computing interest under section 6621(c). [3] Respondent filed an Answer alleging facts in support of the fraud determination, and petitioner filed a Reply specifically denying each and every allegation, except respondent's characterization of petitioner as a certified public accountant and former experienced Internal Revenue agent, who is educated and knowledgeable about the provisions of the Internal Revenue Code. *183 At the time the petitions were filed in these cases, petitioner resided in the Federal penitentiary in Littleton, Colorado. Pursuant to notice to the parties, these cases were set for trial at the Court's trial session at Los Angeles, California, on August 26, 1991. Respondent filed a pretrial memorandum but petitioner did not. On August 22, 1991, petitioner filed a Motion for Dismissal Without Prejudice. When the cases were called from the calendar, there was no appearance by or on behalf of petitioner. Respondent filed motions in each case to dismiss for lack of prosecution and to find deficiencies, additions to tax, and increased interest for 1982 in accordance with respondent's Amendment to Answer, and for 1983, 1984, and 1985 in accordance with the notice of deficiency, subject to a few modifications disclosed therein. [4] Petitioner's Motion to Dismiss Without Prejudice was denied. These cases were consolidated for purposes of briefing and opinion, and respondent was ordered to file a Memorandum of Points and Authorities on or before October 11, 1991; petitioner was to file a response thereto on or before November 12, 1991. Respondent timely filed her Memorandum of Points *184 and Authorities; petitioner did not file a response thereto. Dismissal of a case is a sanction which may be imposed in the Court's discretion. . It is well settled that a taxpayer's failure to appear at trial can result in a dismissal of the action against him for failure to prosecute where he seeks the redetermination of a deficiency. ; *185 , affd. without opinion . Here petitioner not only failed to appear, but he also did not attempt to engage legal counsel to appear on his behalf. Although properly and timely advised as to the possibility of securing a writ of habeas corpus ad testificandum for purposes of the trial, petitioner did not communicate in any way with respondent or the Court (other than the last minute Motion to Dismiss). In light of petitioner's failure to appear at the trial, we will grant respondent's motion to dismiss with respect to the deficiencies, section 6621(c) interest, and the additions to tax, as determined in the deficiency notices, for which petitioner bears the burden of proof, subject to our resolution of the fraud issue. We now turn to the issues pertaining to the increased deficiency for 1982 and the additions to tax for fraud for all years, for which respondent bears the burden of proof. See Rule 142(a) and (b). Respondent's motion requests that we hold petitioner in default. It is clear that petitioner has failed to proceed within the meaning of Rule 123(a). He has intentionally *186 abandoned his case and we find him in default. "Entry of a default has the effect of admitting all well-pleaded facts in respondent's answer, and a default judgment must be supported by respondent's well-pleaded facts." . In , affd. , we held that "the Commissioner's pleadings must allege specific facts sufficient to sustain a finding of fraud before he will be entitled to a decision that includes an addition to tax for fraud upon the failure of a taxpayer to appear for trial." Section 6653(b)(1) for 1982 through 1985 provides for an addition to tax equal to 50 percent of an underpayment, if any portion of such underpayment was due to fraud. Section 6653(b)(2) provides for an addition to tax in the amount of 50 percent of the interest on the portion of the underpayment attributable to fraud. Fraud is an intentional wrongdoing motivated by a specific purpose to evade a tax known or believed to be owing. , affg. ; *187 . Respondent has the burden of proof and must meet that burden by clear and convincing evidence. Sec. 7454(a); Rule 142(b); ; . Fraud is a factual question to be determined by an examination of the entire record. . In docket No. 16157-88, paragraph 7 of the Amendment to Answer filed on May 17, 1990, respondent makes the following affirmative allegations in support of her claim for an increased deficiency in income tax (and the respective additions to tax under sections 6651(a)(1) and 6653(a)): (a) During the 1982 tax year, petitioner organized, promoted and sold purported "partnership" interests as part of an abusive tax shelter scheme. In reality, petitioner reduced the "partnership" funds received from the ostensible "partnership investors" to his own personal dominion and control and never used the "investors'" funds to purchase assets for the ostensible "partnerships." (b) The funds received from the "partnership *188 investors" in 1982, a total amount of $ 256,938.35, were deposited into ten bank accounts controlled, directly and/or indirectly, by petitioner * * *. (c) The $ 256,938.35 of funds deposited into the ten bank accounts earned $ 5,129.94 of interest in 1982 * * *. (d) Petitioner reduced the funds deposited into the ten accounts to his own personal inurement with no intent to return any amounts to the abusive tax shelter "partnerships" or "partnership investors" and did not acquire any assets for or on behalf of the ostensible "partnerships." (e) Petitioner reported the following income on his 1982 Form 1040: Wages
$ 14,443 less (withholding)
(3,297)
Net Wages
[5] $ 11,196.00
Interest
3,536.00
Schedule C
85,438.00
State Refund
610.00
Total 1982 Income Reported
$ 100,780.00
(f) Petitioner had $ 161,288.29 of unreported income in 1982 computed as follows: Total Deposits from Exhibit A
Investor deposits
$ 256,938.35
Interest
5,129.94
Total Deposits
$ 262,068.29
Less: Reported Income
100,780.00
1982 Unreported Income
$ 161,288.29
*189 In support of her determination of petitioner's liability for additions for fraud, respondent further alleged in paragraph 8 as follows: (b) Petitioner knowingly and intentionally failed to report in income $ 161,288.29 representing funds received from alleged "investors" in an abusive tax shelter scheme through the means of sales of ostensible "partnership interests." (c) Petitioner obtained funds from the "partnership investors" through sale of abusive tax shelter and appropriated the sale proceeds to his own personal inurement with no intention of either purchasing assets on behalf of the ostensible "partnerships" or of returning any funds to the "partnerships" or "partnership investors." (d) Petitioner claimed the following purported "partnership" losses on his 1982 Form 1040 with the knowledge that he never purchased any depreciable assets for either ostensible "partnership" which would entitle him to a prorata share of the claimed depreciation and investment credit: Lever Equipment Fund No. 1 - $ 40,283.00 Genesis II - $ 8,750 (e) Petitioner intentionally failed to maintain books and records to account for his 1982 gross receipts and income and intentionally *190 refused to cooperate with the respondent's audit investigation of his 1982 tax year. (f) Petitioner used nominee corporations and nominee bank accounts in order to disguise his dominion and control over the funds he received for the abusive tax shelter "investors." (g) Petitioner surreptitiously manipulated an extremely complex scheme, commonly known as a "money circle," in order to disguise the source of the abusive tax shelter "partnership" or "investor" funds he received and deposited into bank accounts maintained in the names of LOGOS INVESTMENTS and EAGLE INVESTMENTS. (h) Petitioner intentionally attempted to conceal the abusive tax shelter sale proceeds through resort to the "money circle" scheme. He further attempted to conceal the associated interest income by showing it on his Form 1040 Schedule B and then eliminating it from his own return by showing it as a "Nominee Transfer" although no nominee existed. In docket No. 3789-90, paragraph 7 of respondent's Answer, she made the following allegations in support of the burden of proof as to fraud: b. Petitioner knowingly and intentionally failed to report in income for the taxable years 1983, 1984 and 1985, *191 funds, in the amounts of $ 505,278.00, $ 1,672,356.00 and $ 521,305.00, respectively, representing amounts received from alleged "investors" in an abusive tax shelter scheme through the means of sales of ostensible "partnership interests," as well as amounts received from clients of her accounting practice for services rendered. c. Petitioner obtained funds from the "partnership investors" through the sale of abusive tax shelters and appropriated the sales proceeds to his own personal inurement with no intention of either purchasing assets on behalf of the ostensible "partnerships" or of returning any funds to the "partnerships" or "partnership investors." d. During the taxable year 1983, petitioner organized, promoted and sold purported "partnership" interests as part of an abusive tax shelter scheme. In reality, petitioner reduced the "partnership" funds received from the ostensible "partnership investors"to his own personal dominion and control and never used the "investors'" funds to purchase assets for the ostensible "partnerships." (1). The accounting fees and the funds received from the "partnership investors" for the taxable year 1983, a total amount of $ *192 702,652.30, were deposited into ten bank accounts, controlled, directly and/or indirectly, by petitioner * * *. (2). The $ 702,652.30 of funds deposited into the ten bank accounts earned $ 25,069.79 of interest in 1983 * * *. (3). Petitioner reduced the funds deposited into the ten accounts to his own personal inurement with no intent to return any amounts to the abusive tax shelter "partnerships" or "partnership investors" and did not acquire any assets for or on behalf of the ostensible "partnership." (4). Petitioner had $ 505,278.00 of unreported income for the taxable year 1983 * * *. [Computation omitted.] e. During the taxable year 1984, petitioner organized, promoted and sold purported "partnership" interests as part of an abusive tax shelter scheme. In reality, petitioner reduced the "partnership" funds received from the ostensible "partnership investors" to his own personal dominion and control and never used the "investors'" funds to purchase assets for the ostensible "partnerships." (1). The accounting fees and the funds received from the "partnership investors" for the taxable year 1984, a total amount of $ 14,690,476.18, were deposited into seventeen *193 bank accounts, controlled, directly and/or indirectly, by petitioner * * *. (2). The $ 14,690,476.18 of funds deposited into the seventeen bank accounts earned $ 104,292.64 of interest in 1984 * * *. (3). Petitioner reduced the funds deposited into the seventeen accounts to his own personal inurement with no intent to return any amounts to the abusive tax shelter "partnerships" or "partnership investors" and did not acquire any assets for or on behalf of the ostensible "partnership." (4). Petitioner had $ 1,672,356.00 of unreported income for the taxable year 1984 * * *. [Computation omitted.] f. During the taxable year 1985, petitioner organized, promoted and sold purported "partnership" interests as part of an abusive tax shelter scheme. In reality, petitioner reduced the "partnership" funds received from the ostensible "partnerships investors" to his own personal dominion and control and never used the "investors'" funds to purchase assets for the ostensible "partnerships." (1). The accounting fees and the funds received from the "partnership investors" for the taxable year 1985, a total amount of $ 3,539,437.59, were deposited into twenty-two bank accounts, *194 controlled, directly and/or indirectly, by petitioner * * * (2). The $ 3,539,437.59, of funds deposited into the twenty-two bank accounts earned $ 73,161.96 of interest in 1985 * * *. (3). Petitioner reduced the funds deposited into the twenty-two accounts to his own personal inurement with no intent to return any amounts to the abusive tax shelter "partnerships" or "partnership investors" and did not acquire any assets for or on behalf of the ostensible "partnership." (4). Petitioner had $ 521,305.00 of unreported income for the taxable year 1985 * * *. [Computation omitted.] g. Petitioner intentionally failed to maintain books and records to account for his 1983, 1984 and 1985 gross receipts and income and intentionally refused to cooperate with the respondent's audit investigation of his 1983, 1984 and 1985 tax years. h. Petitioner used nominee entities and nominee bank accounts in order to disguise his dominion and control over the funds he received from the abusive tax shelter "investors." i. Petitioner surreptitiously manipulated an extremely complex scheme, commonly known as a "money circle," in order to disguise the source of the unreported accounting *195 service fees and the abusive tax shelter "partnership" or "investor" funds he received and deposited into his various bank accounts. j. Petitioner intentionally attempted to conceal the unreported accounting service fees and abusive tax shelter sale proceeds through resort to the "money circle" scheme. He further attempted to conceal the associated interest income by showing it on his Form 1040 Schedule B and then eliminating it from his own return by showing it as a "Nominee Transfer" although no nominee existed. k. Petitioner voluntarily and intentionally claimed the following fabricated loss and contribution deductions and fabricated the investment tax credit for the listed tax years knowing that the claimed deductions and credits had no foundation in fact.
Tax Year
1983
1984
1985
Net Operating
$ 22,847.00
$ 117,722.00
$ 140,569.00
Loss deduction
Charitable
27,258.00
24,329.00
24,218.00
Contributions
Investment
25,653.00
24,413.00
7,800.00
Tax Credit
The facts, as established by respondent's affirmative pleadings, lead us to conclude that respondent has proved fraud by clear and convincing evidence. There are several indicia of fraud. First, *196 petitioner received substantial amounts of unreported income. , affg. . Second, petitioner failed to report substantial amounts of income over a 4-year period. ; , affg. . Third, petitioner deliberately overstated his deductions. . Finally, petitioner failed to appear at trial or communicate in a meaningful way with the Court relative to such appearance, an additional indication that he deliberately tried to conceal the true facts concerning his tax liability. . The well-pleaded facts in respondent's answers satisfy us that the entire underpayment for each year was due to fraud and that petitioner had unreported income as asserted by respondent. Therefore, we sustain respondent's determinations as to the unreported income and fraud. To reflect our conclusions *197 and concessions included in respondent's motion to dismiss for lack of prosecution, Orders and Decisions will be entered for respondent, as modified in respondent's motions to dismiss. Footnotes
1. All section references are to the Internal Revenue Code in effect for the years in issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Respondent made no claims in the Amendment to Answer regarding sec. 6653(b)(2).↩
3. In the alternative, respondent determined that if fraud is not sustained, the underpayments of tax are due to negligence. Consequently, respondent determined additions to tax under sec. 6653(a)(1) in the amount of 5 percent of the underpayment, and under sec. 6653(a)(2) in the amount of 50 percent of the interest due on the underpayment which is attributable to negligence. Also, in the alternative, respondent determined that petitioner's returns for taxable years 1983, 1984, and 1985 were not timely filed and, therefore, petitioner is liable for additions to tax under sec. 6651(a)(1).↩
4. In his motion to dismiss respondent claims, inter alia, deficiencies and additions to tax for fraud as follows: Year
Deficiency
Sec. 6653(b)(1)
1982
$  80,158.69
$   40,079.34
1983
264,052.50
132,026.00
1984
889,475.61
444,738.00
1985
158,641.00
79,321.00
The motion also claims additions to tax under sec. 6653(b)(2) for 1982 through 1985. As noted supra↩ note 2, no appropriate request under sec. 6214(a) was made for sec. 6653(b)(2) for 1982; consequently, we do not have jurisdiction to decide that issue.
5. There appears to be a $ 50 footing error.↩